UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NISKANEN CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF ENERGY, <br><br> Defendant. | Civil Action No. 17-676 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Niskanen Center, Inc. is seeking information about the National Coal Council, a chartered federal advisory committee that provides advice and recommendations to the Department of Energy. NCC was established in 1984 by the Secretary of Energy to "give coal . . . the same voice" in government that petroleum had long had. See ECF No. 18 (Pl. MSJ & Opp.), Exh. A (Website) at 1. NCC has an incorporated counterpart — NCC, Inc. — in which the Center is also interested. Plaintiff thus submitted a Freedom of Information Act request to DOE for thirteen categories of information regarding NCC and NCC, Inc. DOE has turned over two sets of responsive documents, but Plaintiff remains dissatisfied with the adequacy of the search and the extent of the withholdings. Suit having been filed, each party now moves for summary judgment. The Court will grant in part and deny in part both Motions.

**I.      Background**

By letter dated March 10, 2017, Plaintiff explained that it is "engaged in a study of the long-term effectiveness of certain federal advisory committees" and requested from DOE thirteen categories of information regarding NCC and NCC, Inc., dating from 1986. See Pl. MSJ

1

& Opp., Exh. O (Plaintiff's Request); ECF No. 16 (Def. MSJ), Exh. B (Email Amending Request). The Center sought such documents as membership lists, reports and studies, newsletters and announcements, agendas and transcripts, financial statements, tax filings, as well as information about NCC subgroups, NCC, Inc.'s incorporation and 501(c)(6) status, NCC Inc.'s finances and expenditures, and the relationship between NCC and NCC, Inc. See Pl. Request at 1–2. DOE responded on April 7, 2017, that it had "assigned" the request to DOE's Office of Fossil Energy (OFE) to conduct a search of its files for responsive documents. See Def. MSJ, Exh. C (DOE Response) at 2.

Ten days later, when DOE failed to respond further by FOIA's statutory deadline, the Center filed this lawsuit. See ECF No. 1 (Complaint). By letter dated July 7, 2017, DOE finally responded to Plaintiff, identifying eleven documents and one Windows Media Player file responsive to the request and indicating that partially withheld documents were redacted pursuant to FOIA Exemption 6. See ECF No. 16-1 (Declaration of Alexander C. Morris), ¶ 21; Def. MSJ, Exh. D (DOE First Response Letter) at 1–2. After reviewing the production, the Center advised DOE that it believed the search deficient, "including because DOE had failed to provide any documents falling within the categories of Plaintiff's request specifically pertaining to NCC, Inc. and its relationship to [NCC]." Pl. MSJ & Opp., Exh. P (Declaration of David Bookbinder), ¶ 2; see also Morris Decl., ¶¶ 22–23. DOE then conducted a further search, identifying in a September 13, 2017, letter 21 additional documents and one additional VOB (Video Object) file. See Morris Decl., ¶ 31; Def. MSJ, Exh. E (DOE Second Response Letter) at 2. It withheld in full or in part certain of those documents based on Exemptions 4 and 6. Id.

Both the Center and DOE have now moved for summary judgment, and DOE has provided copies of the withholdings for the Court's *in camera* review. See ECF No. 23.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of

3

other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III. Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754–55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Plaintiff contends that DOE erred in two essential respects. First, the Center argues that the Agency has failed to demonstrate that it conducted an adequate search. See Pl. MSJ & Opp. at 39. Second, it disputes the applicability of withholdings pursuant to Exemption 4. Id. at 15.

4

The Center does not, conversely, challenge the applicability of Exemption 6 to any of the records at issue. Compare Def. MSJ at 11–12 & Exh. F (Vaughn Index), with Pl. MSJ & Opp. at i–ii. The Court thus addresses arguments as to the search and then the withholdings in turn.

   A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

To demonstrate the adequacy of its search here, Defendant offers two declarations by Alexander Morris, the FOIA Officer in DOE's Office of Public Information (OPI). See Morris Decl.; ECF No. 20-2 (Supplemental Declaration of Alexander C. Morris). He explains that DOE conducted its search in two steps. First, the Agency assigned the Center's request to OFE, "the program office within the [DOE] that is designated by the [NCC] charter to provide primary

support to its organization." Morris Decl., ¶¶ 9, 13. OFE searched "staff records . . . and physical files . . . for any records containing 'National Coal Council' and the names of working groups and subgroups, announcements, press releases, membership lists, charters, studies, agendas, newsletters, meeting minutes, and audio and written transcripts for all years since 1986." Id., ¶ 16. Second, OFE conducted a search of physical files — for the term "National Coal Council" — and email correspondence — for the terms "National Coal Council" and "NCC" — of the previous Designated Federal Officer, Robert Wright, locating additional responsive records. Id., ¶¶ 24–26, 31.

Plaintiff argues that this search was nonetheless inadequate because the Agency failed to search all offices that were likely to contain responsive records and instead confined its search to OFE. See Pl. MSJ & Opp. at 39–40. Specifically, the Center contends that DOE should have at least searched, in addition, the Office of the Secretary of Energy, since the Secretary is the "designated recipient of [NCC's] advice and recommendations." Id. at 14. Plaintiff further maintains that DOE's search within OFE was itself deficient because it did not include "NCC, Inc." as a search term and because it did not locate any responsive records preceding 2008. Id. at 40–43 & Pl. Request at 1–2.

The Court agrees that DOE's search was flawed. To satisfy FOIA's requirements, Defendant must, at minimum, "aver that it has searched all files likely to contain relevant documents." Am. Immigration Council v. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 71 (D.D.C. 2014) (emphasis added). As the D.C. Circuit explained in Oglesby v. United States Department of the Army, 920 F.2d 57 (D.C. Cir. 1990), while an agency need not search every one of its record systems, a "reasonably detailed affidavit . . . averring that all files likely to contain responsive materials . . . were searched, is necessary to afford a FOIA requester an

opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." Id. at 68.

Here, DOE has not averred with adequate detail that all those offices and records systems likely to contain responsive documents have in fact been searched. It describes its "practice to contact the office or offices that are most familiar with the subject matter of [a FOIA] request and to conduct a search in locations where documents would most likely be found," explaining that "OPI determined, based on the nature of [the Center's] request, the staff's knowledge of DOE's organization, and [OFE's] comments and confirmation, that responsive documents would be limited to the [OFE] office" because OFE "is designated by the [NCC] charter to provide primary support to its organization." Morris Decl., ¶¶ 10–11, 13. These attestations do not pass muster. See Rodriguez v. FBI, No. 16-2465, 2018 WL 999908, at *3 (D.D.C. Feb. 21, 2018) (finding agency's search inadequate where it failed to "explain why 'the only reasonable place to look for' the documents was within [a single office] or why 'no other record systems are reasonably likely to contain' responsive records") (quoting Aguiar v. Drug Enforcement Admin., 865 F.3d 730, 739 (D.C. Cir. 2017)). Standing on its own, DOE's assertion that responsive records would be "limited" to OFE is inadequate because the Court cannot evaluate that claim absent "reasonable detail." Oglesby, 920 F.2d at 68.

The Government, moreover, offers no response for the lack of a search of the Office of the Secretary, despite his or her status as the designated recipient of NCC's advice and recommendations. See Pl. MSJ & Opp., Exh. C (NCC Charter) at 1. The only elaboration DOE offers — namely, that OFE has "primary" responsibility for overseeing NCC — is likewise insufficiently detailed to salvage the adequacy of the search. See Oglesby, 920 F.2d at 68

7

(finding search deficient notwithstanding agency's assertion that "a search was initiated of the Department record system most likely to contain the information which had been requested").

The Center's next arguments concerning DOE's search of OFE attain mixed success. First, Plaintiff misses the mark in maintaining that Defendant's failure to locate records from 1986 to 2008 demonstrates the inadequacy of its search. "[T]he fact that responsive documents once existed does not mean that they remain in the [agency's] custody today." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004). On the other hand, the Court agrees that the search of OFE was deficient in one respect — *viz.*, DOE's failure to use search terms calculated to locate documents relating to NCC, Inc. The Center's request listed thirteen categories of records, of which categories 6–13 concerned that entity. See Pl. Request at 2. Nowhere does DOE indicate, however, that it searched physical and electronic documents for the term "NCC, Inc.," as well as "NCC," nor does it maintain that a search for the latter term would necessarily uncover uses of the former. Defendant's contention that its search was still adequate because it did in fact locate some documents concerning NCC, Inc. is unpersuasive. See ECF No. 20 (Def. Reply) at 3. The search must be "reasonably calculated to uncover the requested documents." SafeCard, 926 F.2d at 1201. As it did not include a term central to the second half of the Center's request, the search does not meet that standard.

To sum up, DOE's search was inadequate in two respects. First, the Agency either did not sufficiently detail its attestation that OFE was the only office likely to contain responsive materials, or it failed to search all offices likely to contain them. Second, the search of OFE itself was not reasonably calculated to uncover all responsive documents as it did not contain terms reflecting the second half of the Center's request. The Court will therefore deny

Defendant's Motion for Summary Judgment as to the adequacy of the search and grant Plaintiff's Cross-Motion on this issue.

  B.  Withholdings

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . ., shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  See 5 U.S.C. § 552(b)(1)–(9).  These exemptions are to be "narrowly construed," Rose, 425 U.S. at 361, and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure."  Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  This Court, accordingly, can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Comm., 489 U.S. at 755.

The Center argues that DOE's withholdings are deficient in three respects.  First, it maintains that the Vaughn Index and declarations explaining the withholdings are insufficient on their face, and that the Morris Declaration does not satisfy the requirements for summary judgment because it is insufficiently detailed and not based on personal knowledge.  See Pl. MSJ & Opp. at 17–19.  Second, Plaintiff contends that Exemption 4 does not cover DOE's withholdings.  Id. at 15.  Finally, the Center asserts that, even if some of the material may be withheld pursuant to that exemption, DOE has not disclosed segregable non-exempt information.  Id. at 37.  The Court looks at each point separately.

1. *Sufficiency of Declarations and Explanations*

FOIA was drafted with the objective of affording the public maximum access to most government records. See Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973). The Government, as a result, bears the burden of demonstrating that at least one exemption applies to all documents or excerpts it seeks to withhold. Id. In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to engage in effective advocacy, the Government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King v. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)). The Center here believes that DOE's submissions are too general to satisfy that standard. The Court cannot disagree that much of DOE's declarations and Vaughn Index are merely boilerplate. It is not necessary here, however, to order that the Government supplement these items, as it has submitted its withholdings for *in camera* review. The Court can thus simply conduct an independent analysis. See Electronic Privacy Information Center v. Dep't of Justice, 584 F. Supp. 2d 65, 82–83 (D.D.C. 2008).

To the extent the Center's argument is based on Federal Rule of Civil Procedure 56(c)(4), it also misses the mark. Plaintiff contends that the Morris Declaration does not comply with that Rule because it is not based "on personal knowledge" and does not "set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matter[] stated." Pl. MSJ & Opp. at 18 (quoting Fed. R. Civ. P. 56(c)(4)). Specifically, the Center asserts that Morris cannot possibly have the requisite knowledge because he does not claim to "have any substantive knowledge or information regarding [NCC]/NCC Inc.'s workings." Id.

Such a position misconstrues what Rule 56 mandates in the FOIA context. A FOIA declarant may satisfy that rule's personal-knowledge requirement if "in his declaration, [he] attest[s] to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." Madison Mech., Inc. v. Nat'l Aeronautics & Space Admin., No. 99–2854, 2003 WL 1477014, at *6 (D.D.C. Mar. 20, 2003) (quoting Spannus v. Dep't of Justice, 813 F.2d 1285, 1289 (4th Cir. 1987)); see also Barnard v. Dep't of Homeland Security, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Declarants are not required to participate in the search for records."). Hearsay is thus acceptable for FOIA affidavits. SafeCard, 926 F.2d at 1201; see also Carney v. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search.").

Morris, in this case, attests that he is "the manager for all FOIA requests sent to DOE HQ," with responsibilities that "include overseeing the review, analysis, and processing of FOIA requests." Morris Decl., ¶¶ 2–3. He also explains that his statements "are based upon [his] personal knowledge, upon information provided to [him] in [his] official capacity, and upon conclusions and determinations reached and made in accordance therewith." Id., ¶ 4. In other words, his conclusions rest on information provided to him by other agency employees and his own review of the records. That attestation is sufficient to satisfy Rule 56's requirements here.

2. *Exemption 4*

DOE has withheld six documents in full or in part pursuant to Exemption 4. See Vaughn Index at 1–3, 6. That exemption covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "The terms in

11

Exemption 4 are to be given their 'ordinary meanings.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 38 (D.C. Cir. 2002) (quoting Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). The Center raises a variety of challenges to the applicability of Exemption 4 to each of the six documents. The Court will address them in turn.

a. Commercial or Financial Information

Plaintiff first contends that the exemption cannot cover the withholding in full of Document 3 or one of the redactions in Document 1 because DOE does not describe either as covering financial or commercial information. See Pl. MSJ & Opp. at 20–21. The Center points out that the Vaughn Index depicts Document 3 as a "legal memorandum . . . regarding private litigation related to NCC Inc." and the redaction in Document 1 as "an agenda item referring to private litigation." Vaughn Index at 1–2. Having reviewed both documents, the Court is satisfied that, while the description in the Vaughn Index could be both more detailed and more precise, Documents 1 and 3 meet the threshold requirement that they concern financial or commercial information.

b. Confidentiality

The parties next dispute which standard applies to assess whether financial or commercial information in the Government's possession is confidential for the purposes of Exemption 4. The level of protection depends upon whether the information in question was furnished voluntarily to the Government or whether the Government required its submission. Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 878–80 (D.C. Cir. 1992) (*en banc*). If the Government obtained the information voluntarily, the Critical Mass standard governs. It provides that "financial or commercial information provided to the Government on a voluntary basis is 'confidential' . . . if it is of a kind that would customarily not be released to the

12

public by the person from whom it was obtained." Id. at 879. If, on the other hand, the Government compelled submission of the information, the standard is the one announced in National Parks and Conservation Association v. Morton, 498 F.2d 765 (D.C. Cir. 1974). That one provides that "commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely . . . (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." Id. at 770 (footnote omitted).

The Government contends that the information in question was furnished voluntarily because it was provided without the compulsion of a subpoena, court order, or warrant. See Def. MSJ at 9–10. The Center maintains the contrary position, claiming that the information was given involuntarily to DOE by "entities that exist solely to advise the federal government and could not perform that solitary function without a formal government charter that may be eliminated by DOE at any time and for any reason." Pl. MSJ & Opp. at 22. DOE disputes the characterization that the entities exist solely to advise DOE, arguing that "[NCC] and NCC, Inc. are not one in the same [*sic*]." Def. Reply at 5; see also ECF No. 20-1 (Declaration of Janet Gellici), ¶¶ 2–3. To the extent NCC and NCC, Inc. are separate entities, the argument goes, NCC, Inc. cannot be "compel[led]" by DOE "to provide the subject documents." Def. Reply at 6.

The Court finds that National Parks is the appropriate standard here. Given NCC's status and functions, it makes little sense to conclude it is furnishing documents voluntarily to DOE, and NCC, Inc. is an alter ego ultimately situated no differently from NCC itself. Whether DOE obtained the documents by subpoena or court order is not the relevant test. See Center for Public Integrity v. Dep't of Energy, 234 F. Supp. 3d 65, 74–75 (D.D.C. 2017). Rather, the question is

13

whether DOE had the authority "to compel the documents or information at issue." Id. at 75 (citation omitted). In this case, DOE exercises substantial authority over NCC, which is federally chartered and cannot meet without the presence of a DOE officer or employee. See 5 U.S.C. App. 2 §§ 9(c), 10(e); Pl. MSJ & Opp., Exh. R (NCC Meeting Request). That officer or employee can "adjourn any such meeting." 5 U.S.C. App. 2 § 10(e). NCC itself has recognized, in statements to members, that its authority "emanates from the charter which is granted by the DOE and the Secretary himself or herself," with the Secretary "appoint[ing] the members." Pl. MSJ & Opp., Exh. B (Meeting Transcript) at 49. The Federal Advisory Committee Act also requires DOE to engage in oversight of NCC's activities, including ensuring that NCC is not influenced by any special interest and that its membership is fairly balanced. See 5 U.S.C. App. 2 § 5(b)(2)–(3). FACA also mandates that DOE "exercise control and supervision over the establishment, procedures, and accomplishments" of NCC and "assemble and maintain" its "reports, records, and other papers." Id. § 8. In other words, FACA itself requires that DOE obtain a variety of documents from NCC.

DOE's assertion that NCC, Inc. is differently situated from NCC is equally unpersuasive. NCC, "perhaps uniquely among federal advisory committees," Pl. Request at 2, has a dual structure; NCC, Inc. serves as an incorporated alter ego. There is no meaningful distinction between the two. To begin, NCC, Inc.'s bylaws treat it as identical to NCC, indicating that "meetings of members of the Corporation" are "held to develop and consider advice, information or recommendations to be given to the Secretary of Energy . . . subject to and consistent with [FACA]," with "[m]embers of the Corporation" being "selected and appointed to serve on the National Coal Council by the Secretary of Energy." Pl. MSJ & Opp., Exh. M (NCC, Inc. Bylaws) at 1. NCC and NCC, Inc. have a single joint website, and the contact information listed

14

on that website and in the federal charter is identical for both. See Website at 5; NCC Charter at 6. The members of NCC are also shareholders of NCC, Inc., and the officers of NCC and NCC, Inc. are identical. See Meeting Transcript at 51. Janet Gellici serves as CEO of both organizations. Id., Exh. H (Federal Register Announcement) at 3; id., Exh. L (2016 NCC Agenda) at 1–2; Gellici Decl., ¶ 2. NCC, Inc. collects dues that support NCC's efforts and is generally "a totally parallel organization." Meeting Transcript at 51. Consistent with the D.C. Circuit's instruction that "the fiction of a corporate entity cannot stand athwart sound regulatory purpose," particularly where "the corporate fiction would enable circumvention of a statute," Quinn v. Butz, 510 F.2d 743, 758 n.95, 759 (D.C. Cir. 1975) (citations omitted), the Court concludes that there is no meaningful difference between NCC and NCC, Inc. that could support the conclusion that DOE obtained the records concerning NCC, Inc. by voluntary disclosure.

As such a conclusion means that the National Parks standard applies, this essentially resolves the dispute over Exemption 4. This is because the Government never really argues that its withholdings satisfy that standard. It does not contend, for example, that disclosure of the withheld information would impair its ability to obtain such information in the future, and it makes only a cursory statement that disclosure would harm NCC, Inc.'s competitive position by "dissuad[ing] members from joining the organization," providing indicia that "could be read to indicate the value of the company," or "caus[ing] reputational harm." Gellici Decl., ¶¶ 6–7. DOE also offers a vague assertion that "[d]isclosure of this information" would "harm" NCC, Inc.'s "transactions with third parties for memberships and membership fees, the ability to negotiate salary and benefits with staff, and the ability to make decisions regarding private

15

litigation," while "curtail[ing] companies from entering into contracts or other negotiations with the Government in the future." Morris Decl., ¶ 34.

These statements are insufficient to demonstrate that the Government has satisfied National Parks, and, having reviewed the documents *in camera*, the Court concludes that the redactions in Documents 1, 2, 4, 5, and 19 and the fully withheld Document 3 are not confidential for the purposes of Exemption 4. The documents include an agenda reference to private litigation, a budget overview, a legal memorandum, a strategic plan, meeting notes, and a statement of activities. There is no colorable argument that disclosure of any of this information would impair DOE's ability to obtain it in the future, and it is difficult to see how disclosure would harm NCC, Inc.'s competitive position. To the extent NCC, Inc. could be said to have competitors, a proposition about which the Court is dubious, none of the information in question is likely to harm NCC, Inc.'s negotiating position *vis-à-vis* its members, staff, or the Government. As a result, the documents cannot be withheld as confidential under Exemption 4.

c. Privilege

The game is not yet over. Even if the information in question is not confidential, withholdings may be permissible under Exemption 4 if any of the information in question is privileged. See 5 U.S.C. § 552(b)(4); see also Washington Post Co. v. Dep't of Health & Human Servs., 690 F.2d 252, 267 n.50 (D.C. Cir. 1982). DOE makes a specific assertion of privilege only as to Document 3, invoking the attorney-client and work-product privileges. See Vaughn Index at 2. The Court believes that further briefing is warranted before it can resolve the matter.

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," and it "also protects communications from attorneys to their clients if the communications rest on confidential

16

information obtained from the client." Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997) (internal quotations and citations omitted). While the invocation of the privilege is certainly cursory, *in camera* review of Document 3, a legal memorandum passing between NCC, Inc. and counsel, confirms that it meets the requisite test. Plaintiff, however, is correct that voluntary disclosure to a third party waives the privilege. See Permian Corp. v. United States, 665 F.2d 1214, 1219 (D.C. Cir. 1981). Although the Court has concluded that disclosure was involuntary for the purposes of the confidentiality analysis, it is not clear that the same standard for voluntariness applies to the waiver question. See Center for Public Integrity v. Dep't of Energy, 287 F. Supp. 3d 50, 61 (D.D.C. 2018) (holding standards are different). The Court will thus require further briefing regarding the appropriate standard and the circumstances under which Document 3 was submitted to DOE.

Nor is it clear that the work-product privilege applies. That privilege protects a "document[] or tangible thing[] . . . prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). "In ascertaining whether a document was prepared in anticipation of litigation," the D.C. Circuit applies a "'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Nat'l Ass'n of Criminal Defense Lawyers v. Dep't of Justice Executive Office for U.S. Attorneys, 844 F.3d 246, 251 (D.C. Cir. 2016) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)). The Court cannot determine, based on Defendant's summary invocation of the privilege in the Vaughn Index, whether Document 3 meets that test. See Vaughn Index at 2. The briefing should also therefore provide further detail on that score.

Finally, DOE also indicates that one of the redactions in Document 1 covers "an agenda item referring to private litigation." Vaughn Index at 1. To the extent the reference to private litigation could be read as an invocation of privilege, the Court rejects the claim of either attorney-client or work-product privilege as to that document. The redacted agenda item is not a communication between an attorney and a client, nor is it prepared in anticipation of litigation.

\*     \*     \*

In sum, as to the Exemption 4 claim, the Court will deny the Government's Motion in part and grant the Center's Cross-Motion in part, ordering the release of Documents 1, 2, 4, 5, and 19. As to Document 3, the Court will require further briefing to determine if a privilege applies.

### 3. *Segregability*

One issue remains. FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Generally, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity"). Here, because the Court is ordering disclosure of Documents 1, 2, 4, 5, and 19, the segregability analysis is moot. The Court is also satisfied that there is no reasonably segregable portion of Document 3 that may be released.

**IV. Conclusion**

For the foregoing reasons, the Court will deny Defendant's Motion and grant Plaintiff's Cross-Motion as to the adequacy of the search and as to the impermissibility of withholding Documents 1, 2, 4, 5, and 19. It will require further briefing as to the permissibility of withholding Document 3. A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg  
JAMES E. BOASBERG  
United States District Judge

Date: September 13, 2018